UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| JAMES DOTSON | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:08-CV-442 |
| | ) | (Cr: 3:04-CR-136) |
| UNITED STATES OF AMERICA | ) | *Jordan/Shirley* |

**MEMORANDUM OPINION**

Proceeding *pro se*, federal inmate James Dotson ("petitioner" or "Dotson") brings this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, [Doc. 108].[1] The United States has responded in opposition to the motion, [Doc. 112], arguing that petitioner is entitled to no relief. That argument is well-taken and, for the reasons which follow, the motion will be **DENIED** and the case **DISMISSED**.

**I. Procedural History**

On October 4, 2005, a four-count superceding indictment was filed, charging petitioner with stealing a firearm, a violation of 18 U.S.C. § 924(k); being a convicted felon in possession of ammunition, a violation of 18 U.S.C. § 922(g); being a felon in possession of a firearm and ammunition, also a § 922(g) offense; and possession of a stolen firearm, a violation of 18 U.S.C. § 922(j), [Doc. 59]. Dotson proceeded to a jury trial, was convicted

---

[1] All citations to the record refer to Petitioner's criminal file.

on all counts, and was sentenced, on May 24, 2006, to 235 months on the first two counts and a concurrent 120 months on counts three and four.

Dotson appealed, but relief was denied. *United States v. Dotson*, 246 Fed. Appx. 897, 2007 WL 1748137 (6th Cir. June 19, 2007) (unpublished disposition). Dotson was equally unsuccessful in petitioning the United States Supreme Court for a writ of certiorari, [Docs. 106, 107]. Petitioner then filed this instant motion to vacate, asserting two grounds for relief—that he is actually innocent of being a career criminal and of the sentence imposed thereto and that he received ineffective assistance from his attorney.

## II. Standards of Review

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). However, a prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, a court is to determine, after a review of the answer and the records of the

case, whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court finds that an evidentiary hearing is unnecessary and that it can decide this motion on the record.

### III. Factual Background

According to the Sixth Circuit Court of Appeals' opinion on direct review, *see Dotson*, 246 Fed. Appx. 897, 898, the saga surrounding Dotson's criminal activities began when a home was burglarized in Clinton, Tennessee, and various items stolen, among them blank checks, a firearm, and ammunition. The next day, two men, latter determined to be Dotson and his co-defendant, entered a Target department store in a shopping center; rapidly walked to the cell- phone aisle; grabbed two cell phones and a prepaid calling card; and headed to the checkout line, where Dotson wrote a check for the cell phones. The men's behavior had aroused the suspicions of Target's security manager, who had seen the men enter and pick up the merchandise and, with one of his trainees, had watched the check-writing episode on video. The security manager directed the trainee to pick up the check from the cashier so that he could determine whether it had been forged or stolen.

The security manager called the issuing bank, learned that it had been reported stolen, called the police to report the incident, and continued to watch as the men entered a red car and Dotson drove to another store in the shopping plaza. The manager, who had gotten in

his car and was following the red car, saw both men enter the store and, soon thereafter, the co-defendant leave the store, return to the car, and seat himself in the front passenger seat. Meanwhile, an officer, responding to the police report, arrived at Target and was given a cell phone to speak with the security manager. The security manager spoke with the police officer and updated him as to the ongoing events, described his and the suspects' car, and provided his location. The police officer drove his cruiser to the location of the red car, saw the co-defendant sitting in it, parked behind it, got out of his cruiser, approached it, and asked the co-defendant to step out of the car. The co-defendant agreed and was patted down, asked to sit in the cruiser to answer some questions, and did so. The co-defendant gave a false name and said that his friend was in the store.

Dotson returned to the car, was told by the officer that he was not under arrest, and was asked to answer some questions involving allegations about forged checks. Dodson likewise agreed to sit in the cruiser and answer questions. The warnings required under *Miranda v Arizona*, 384 U.S. 436 (1977), were given and both men denied passing the stolen check. The security manager arrived and identified the men as the ones who had passed the check.

At this point, Dotson refused to answer any more questions, was removed from the cruiser, searched, and placed into custody. The pat-down search revealed a crumpled stolen check in his pants pocket. Dotson admitted that he owned the red car and was transferred to the patrol car of an assisting officer. After Dotson was seated in the patrol car, the

responding officer found, beneath the back seat of his cruiser, a checkbook containing the stolen checks and a plastic identification care bearing the name of victim of the burglary and Dotson's photograph. A search of Dotson's car disclosed a loaded pistol, imprinted with the same serial number as that on the handgun missing from the burglarized home; a UMC-ammunition box; and a box containing five books of the homeowner's checks. There were no usable fingerprints on the pistol but the co-defendant's prints were on the ammunition box.

## IV. Discussion

Petitioner's claims are addressed in the order in which they were raised.

### A. *Innocent of Career Criminal Status and Ensuing Sentence Enhancement*

The Armed Career Criminal Act (the "ACCA"),18 U.S.C. § 924(e), imposes a mandatory minimum sentence of 15 years in prison for possession of a firearm by a convicted felon who has three prior convictions for a violent felony or a serious drug offense. Dotson was sentenced under the ACCA based on his three prior violent felony convictions. In his first claim, Dotson maintains that he is actually, factually, and legally innocent of the sentencing enhancement imposed under § 4B1.4 of the United States Sentencing Guidelines because one of the predicate offenses which formed the basis for the armed career offender finding was entered by a court which lacked jurisdiction to do so. As authority for his claim, Dotson cites to *Murray v. Carrier*, 477 U.S. 478 (1986), and *Sawyer v. Whitley*, 404 U.S. 333 (1992), and invites the Court to see his memorandum in support.

However, as respondent points out, no supporting memorandum was ever filed by petitioner. Though the claim raised in the § 2255 motion has no supporting factual allegations, the Court will generously construe this *pro se* petitioner's pleading as raising the same facts which were offered to support the somewhat similar claim presented in his direct appeal.

In that appeal, Dotson argued that one of his prior convictions—a 2003 Morgan County, Tennessee, burglary conviction—was invalid under double-jeopardy principles because a judge improperly set aside his guilty plea to lesser charges and bound the case over to the grand jury, ultimately resulting in Dotson's plea to charges, which included the burglary.

The law is clear: Dotson may not resort to a § 2255 proceeding to challenge the validity of his state conviction, even though that conviction served to enhance his federal sentence. *See Daniels v. United States*, 532 U.S. 374 (2001) (a prisoner cannot depend on § 2255 as a procedure through which to attack his prior state convictions, which were used to lengthen a federal sentence). Unfortunately for Dotson, he has no recourse in state court to redress the claimed unlawful conviction because the time for filing a direct appeal or post-conviction action has lapsed. And while there is no time limit for filing a state habeas corpus case, double jeopardy claims, generally, are "not appropriately raised in petitions seeking the writ of habeas corpus." *State v. Kennedy*, 2012 WL 2127486, *2 (Tenn. Crim. App. June 12,

2012) (citing *Claypole v. State*, No. M1999–02591–CCA–R3–PC, 2001 WL 523367 (Tenn. Crim. App, May 16, 2001)).

Be that as it may, Dotson did not first challenge his claimed invalid Monroe County conviction "in a state court or in an independent § 2254 habeas proceeding," *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999), and he may not now do so in a § 2255 motion. *Smith v. United States*, 262 F.3d 537, 541 (6th Cir. 2001) (citing cases following *Turner* for "the proposition that a defendant may not seek relief from his state convictions in a habeas corpus petition attacking his federal sentence").

Because petitioner has failed to show actual, factual, or legal innocence of the ACCA designation, his sentencing enhancement claim fails completely.

## B. *Ineffective Assistance of Counsel*

In his second claim, Dotson cites to *Strickland v. Washington*, 466 U.S. 668 (1984), as authority for his contention that his lawyer gave him ineffective assistance by failing to defend his client's liberty interests and that, but for counsel's failures, the outcome would have been different. As in the prior claim, Dotson provides no factual development for the present claim but invites the Court to see his memorandum in support, which has not been filed.

### 1. *Applicable Law*

The United States Supreme Court has established a two-part test for determining when assistance of counsel is constitutionally ineffective. *See Strickland v. Washington*, 466 U.S.

668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.* at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In effect, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 689.

Second, petitioner must show that his counsel's deficient performance so prejudiced him that the result of the proceeding is unreliable. *Id.* at 687. A petitioner will satisfy the prejudice prong of the *Strickland* test if he shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.[2]

*2. Analysis*

As noted, Dotson has failed to present any developed argument and, needless to say, offers absolutely no factual details showing either a defective performance or resulting prejudice. *See Strickland*, 466 U.S. at 698 (A petitioner must show both deficient performance and resulting prejudice to succeed on claims of ineffective assistance of

---

[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.*

counsel.). To show a deficient performance, a petitioner must point to specific acts or omissions on the part of his attorney to establish that counsel did not provide reasonably professional assistance. *Id.* at 687. Dotson has alleged nothing to satisfy the deficient-performance prong of the *Strickland* test.

Nor has Dotson alleged any examples of prejudice ensuing from his lawyer's unexplained shortcomings. The failure to allege prejudice alone provides an adequate ground for rejecting an ineffective assistance of counsel claim, even if deficient performance is assumed. *See Strickland*, 466 U.S. at 687 and 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Thus, the claim of ineffective assistance against Dotson's attorney affords him no ground for relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) (finding that a § 2255 motion, which contains only vague conclusory statements without substantiating allegations of specific facts, fails to state a claim and may be dismissed).

## V. Conclusion

Because the grounds presented for relief in this motion to vacate lack merit, this motion to vacate will be **DENIED**.

## VI. Certificate Of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may

appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Those whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The claims have been assessed under the relevant standards and the Court now finds that they do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER:**

_____
LEON JORDAN
UNITED STATES DISTRICT JUDGE